CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 28 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

DEWAYNE ANTHONY SHIFFLETT,    )
    Petitioner,               )
                           )
v.                          )    Case No. 7:06cv00497
                           )
UNITED STATES OF AMERICA,    )  By:  Hon. Michael F. Urbanski
    Respondent.          )      United States Magistrate Judge

## REPORT AND RECOMMENDATION

Petitioner DeWayne Anthony Shifflett ("Shifflett") brings this action under 28 U.S.C. §

2255, alleging that counsel provided ineffective assistance in that (1) he failed to inform the court

during the guilty plea hearing that Shifflett refused to sign a plea agreement, he refused to admit

possessing a firearm at any time in furtherance of a drug trafficking offense, and he refused to

admit or concede to the quantity of drugs attributable to the conspiracy; (2) he failed to "apply

Booker[1]" to the plea and sentencing proceedings; (3) he failed to argue the indictment should

have been dismissed under Booker for lack of factual specificity; and (4) he failed to file an

appeal. By Memorandum Opinion and Order entered April 26, 2007, the court found that it was

unable to resolve the issue of whether trial counsel, David A. Downes ("Downes") was

ineffective in failing to file an appeal on the existing record and, therefore, ordered an evidentiary

hearing on the same.[2] By a separate Order entered the same day, the court referred this matter to

---

[1] United States v. Booker, 543 U.S. 220 (2005).

[2] The court declined to address Shifflett's other claims, finding that if counsel was
ineffective for failing to file to file a notice of appeal all other claims should be dismissed
without prejudice. However, as the undersigned finds counsel was not ineffective on the appeal
issue, Shifflett's remaining claims are addressed herein.

the undersigned Magistrate Judge to hold an evidentiary hearing and submit proposed findings of fact and a recommended disposition. An evidentiary hearing was conducted on July 31, 2007.

Based on the evidentiary hearing testimony, the transcripts of Shifflett's guilty plea and sentencing hearings, and the information contained in the Pre-Sentence Investigative Report, the undersigned concludes that Shifflett has not met his burden of proving Downes was ineffective for failing to file a notice of appeal. Shifflett has failed to present any credible evidence suggesting he instructed counsel to file a notice of appeal. The evidence demonstrates that Shifflett assisted the government in its efforts to prosecute those involved in the narcotics distribution conspiracy and knowingly and voluntarily entered a guilty plea, all in an effort to reduce his potential sentence. The evidence also establishes that after the sentence pronouncement Shifflett and his family both made efforts to aid the government with the hope that such efforts would result in a further sentence reduction. Accordingly, as all of Shifflett's pre-trial and post-trial efforts were designed to reduce his sentence, Shifflett in fact received a substantial benefit at the sentencing hearing for his pre-trial efforts and acceptance of responsibility, and the potential remained for a further sentence reduction, the undersigned finds a rational defendant in Shifflett's position would not have appealed his conviction; thus, he was also not prejudiced by the alleged failure. Accordingly, the undersigned concludes counsel's failure to note an appeal was not constitutionally deficient. Additionally, the undersigned finds Shifflett's remaining grounds for relief are without merit. Therefore, the undersigned recommends that respondent's motion to dismiss be granted and Shifflett's petition for relief be dismissed.

2

# I.

On May 26, 2005, Shifflett pled guilty to conspiracy to knowingly and intentionally distribute five hundred (500) grams or more of methamphetamine and using and/or carrying a firearm during and in relation to a drug trafficking crime. Transcript of Guilty Plea Hearing, May 26, 2005 [hereinafter Guilty Plea Tr.] at 25-29, Transcript of Continuation of Guilty Plea Hearing, May 26, 2005 [hereinafter Cont. Guilty Plea Tr.] at 14. There was no written plea agreement.

During the plea colloquy, Shifflett, among other things, stated under oath that he had received a copy of the indictment; that he had independently read the indictment and discussed the charges and his case with counsel; that he was fully satisfied with his counsel's representation; that he understood that by pleading guilty he would be adjudged guilty of the charged offense, that if the sentence he received is more severe than he expected he would have no right to withdraw his plea, that if he chose to plead not guilty he would have the right to a jury trial and to be represented by counsel, and the maximum penalties for the offenses charged; that he had spoken with his attorney about the Federal Sentencing Guidelines ("Guidelines") and how those Guidelines might apply to his case; and that he was pleading guilty because he was, in fact, guilty. Guilty Plea Tr. at 16-18, 23-30, 33-36, 39; Cont. Guilty Plea Tr. 14-15.

The government then put on a summary of the evidence which would have been adduced at trial. Special Agent for the Bureau of Alcohol, Tobacco, Firearms and Explosives, Travis A. Moran testified that the government's evidence would have established that (1) Shifflett was a significant trafficker in methamphetamine; (2) Shifflett sold, distributed, transferred, traded, and/or bought multiple ounces and, at times, half pounds to pounds of methamphetamine; (3) on

3

one occasion in 2004 law enforcement officers found Shifflett in his residence in possession of methamphetamine and a firearm; and (4) a confidential informant and Shifflett contracted to trade narcotics for firearms, and such an exchange was completed. Cont. Guilty Plea Tr. 5-8. Shifflett did not disagree with any of the facts as stated by the government. Id. at 13.

Finding that Shifflett was fully competent and capable of entering an informed plea and that his guilty plea was knowing and voluntary, the court accepted his plea. Cont. Guilty Plea Tr. 15-16. During the sentencing hearing on August 16, 2005, the government made an oral motion for a downward departure under § 5K1.1 of the Federal Sentencing Guidelines for substantial assistance, and evidence in support of that motion was heard. Transcript of Sentencing Hearing, August 16, 2005 [hereinafter Sent. Hr. Tr.] at 2-3, 5-6. The evidence proffered established that during the government's first meeting with Shifflett, before counsel was involved, Shifflett informed the investigating officer of the full extent of his activities in the conspiracy and he offered to begin assisting the government. The evidence further established that thereafter, once Downes became involved, Shifflett proffered "well," the information he provided was reduced to writing and was circulated to his co-defendants, the written statement was material to some of his co-defendants' decisions to plead guilty, and Shifflett testified in the Rickey Merica trial. Sent. Hr. Tr. at 5-6. The court granted the § 5K1.1 motion. Sent. Hr. Tr. at 6-7. Downes then submitted two letters of character reference, and he moved the court to sentence below the guideline range and to consider Shifflett's need for drug treatment. Sent. Hr. Tr. at 7. When asked if he would like to say anything to the court, Shifflett merely responded, "I would like to apologize to the Court and apologize to my family." Sent. Hr. Tr. at 10.

4

The Pre-Sentence Investigation Report ("PSR") established that Shifflett had a total offense level of 33 and a criminal history category of III. PSR ¶ 9, 49. Accordingly, the guideline sentence range was 168 to 210 months for the conspiracy crime, plus an additional term of sixty months for the firearm in relation to a drug trafficking crime, which must run consecutive to the conspiracy sentence. PSR ¶ 71. However, the court afforded Shifflett the benefit of his cooperation, and he was ultimately sentenced to a term of 80 months on the conspiracy charge and 60 months on the firearm charge, to be served consecutively. Sent. Hr. Tr. at 11. The Judgment Order was signed on August 16, 2005 and entered August 17, 2005; Shifflett did not note an appeal. See Docket Entry No. 215.

On August 16, 2006, via counsel, Shifflett filed this § 2255 motion claiming trial counsel provided ineffective assistance in that he failed (1) to advise the court that Shifflett refused to sign a plea agreement, refused to admit possessing a firearm, and refused to be responsible for any drug quantity; (2) to apply Booker to Shifflett's plea and sentencing proceeding; (3) to argue that the "in light of Booker" the indictment should have been dismissed; and (4) to file an appeal. Shifflett also asserted that he is actually innocent of the firearm charge.[3] On April 26, 2007, the court entered a Memorandum Opinion and Order ordering an evidentiary hearing on the issue of whether Shifflett asked his attorney to file an appeal. Further, finding that the remaining claims in a habeas petition should be dismissed without prejudice if a district court grants a petitioner's habeas motion due to counsel's failure to file a direct appeal, the court did not reach the merits of

---

[3]Walter Green, IV, retained counsel who filed the original motion, Walter Green, IV, was suspended by the Virginia State Bar for six months, effective January 1, 2007. In February 2007, Green was replaced Robert Ratliff, also retained.

5

Shifflett's other ground for relief.  See Docket Nos. 15,16.  An evidentiary hearing was held on July 31, 2007.  See Docket No. 26.

## II.

Shifflett testified at the evidentiary hearing that although he was offered a written plea agreement, he declined to sign such agreement because he felt it was "unjust" in that it waived "all his rights" and called for the forfeiture of his property.  Shifflett did not testify that he refused to sign the plea agreement because he was not guilty nor because he disagreed with the drug quantity.  Shifflett conceded that prior to the guilty plea hearing he spoke with Downes regarding the charges in the indictment, both in person and over the telephone.  Additionally, he testified that he recalled advising the judge during the plea hearing that he had fully discussed the indictment with Downes, he understood the charges against him, and he was fully satisfied with Downes' advice and representation.  Although Shifflett stated he only made these statements to the trial judge because Downes told him to, he also testified that those statements were true at the time he made them.  Finally, Shifflett contended that since the inception of the criminal proceedings he wanted to "fight" the gun charge, but Downes told him he could not plead not guilty to that charge because there was too much evidence against him and that to receive a "deal" he had to plead guilty to both charges.

Shifflett stated that approximately two weeks before the sentencing hearing he received the PSR and, briefly before the sentencing hearing, he and Downes jointly reviewed the PSR.  He claimed that during their meeting he told Downes he disagreed with the drug weight, amount of money, and guns attributed to him in the PSR, but Downes said his concerns were not important.  Finally, Shifflett testified that prior to the sentencing hearing he was not aware that the

6

government intended to file a § 5K1.1 motion, but he was pleasantly surprised when they did so and when the court granted the motion. Nonetheless, Shifflett maintained that immediately after sentencing he advised Downes he wanted to appeal the gun charge conviction because he was actually innocent, and Downes responded he needed to "submit some papers" and would get back with him, but he never did so. Shifflett also testified that after the sentencing hearing, he spoke to Downes at least two or three times regarding a Rule 35 sentence reduction.

Shifflett conceded that despite the opportunity to advise the court and/or the probation officer conducting the pre-sentence investigation of his dissatisfaction with counsel and his innocence as to the gun charge, he failed to do so. He further testified that the reasons he pled guilty were because he actually was guilty, the prosecuting attorney and law enforcement officers threatened him with statements indicating that if he was tried and convicted he could receive thirty years in jail, law enforcement officers threatened to prosecute his family for their efforts to conceal his drug proceeds, and his attorney told him to plead guilty.

Shifflett's father, Larry Shifflett also testified on Shifflett's behalf. Larry Shifflett testified that prior to the sentencing hearing Downes advised he and his daughter Loranda Shifflett that Shifflett was likely to receive a sentence of between seventeen and nineteen years. Despite this expectation, Shifflett's father testified that when he heard that his son had been sentenced to a substantially lower sentence of eleven years and ten months, he was so shocked by the magnitude of the sentence that he immediately told Downes to file an appeal on his son's behalf. Further, although Shifflett's father testified that he did not speak to his son after the sentence pronouncement, he claims that he spoke to Downes twice on the phone after the sentencing hearing and advised him to file an appeal on his son's behalf.

7

Loranda Shifflett testified that she made several efforts to contact Downes after the sentencing hearing, but she never actually spoke with him. Nor did she leave any messages for Downes indicating that Shifflett asked her to ask Downes to note an appeal.

Shifflett did not offer any evidence of phone records, letters, or any other communication between himself, his family, and/or Downes indicating his desire to plead not guilty to any of the charges, his alleged communication problems with counsel before, during, and after the criminal proceedings, and/or as to his desire to appeal his conviction.

### III.

At the evidentiary hearing Downes testified that prior to his involvement in the underlying criminal matter, Shifflett had already offered many statements to the authorities as to his involvement in the conspiracy and the use of firearms in relation to those activities. Therefore, after discussing the burdens of trial and in consideration of all the evidence against him, Shifflett opted to plead guilty. However, in order to limit his potential liability, Shifflett continued to make substantial efforts to assist the government in the prosecution of various other defendants to earn a § 5K1.1 motion, including testifying at a co-conspirator's trial before the sentencing hearing. Accordingly, during the sentencing hearing, the government made a motion for substantial assistance under § 5K1.1, which the court granted.

Downes testified that he did not coach Shifflett during the plea and sentencing hearing nor did Shifflett voice any doubts or express any unwillingness to plead guilty to both counts of the indictment. He further testified that he and Shifflett fully discussed the PSR prior to the sentencing hearing by telephone and, after such discussion, determined that there were no valid objections to the PSR. Downes continued that he and Shifflett specifically discussed that

8

although there may be some weak objections to the PSR which could be made, such objections would be counterproductive to their "damage control" strategy, would undermine Shifflett's credibility, and ultimately may adversely affect his sentence. Accordingly, Shifflett agreed no objections should made.

Downes testified that immediately after the sentence pronouncement, he advised Shifflett that he had ten days to file an appeal, but that he believed this was not in Shifflett's best interests as there were no meritorious issues for appeal and he had received a sentence well below the guideline range. Accordingly, he advised Shifflett that the focus of their post-sentence strategy should be to continue to assist the government with the hope of earning a Rule 35 sentence reduction, not in filing a baseless appeal. He testified that Shifflett seemed to understand that he had gotten a "break" with the lesser sentence, and he was content to focus on continuing his efforts to assist the government. Finally, he testified that Shifflett never asked him to note an appeal and, had he done so, Downes would have filed an Anders[4] brief.

When pressed, Downes noted that Shifflett was a difficult client in that he was inconsistent and would express some concerns about pleading guilty to any of the charges and/or would frequently say he did not want to be convicted of any crimes, but then, after reviewing the substantial amount of evidence against him, including his own statements, Shifflett would decide to plead guilty, only to later change his mind. However, Downes noted that at both the plea and

---

[4]See Anders v. State of California, 386 U.S. 738, 744 (1967) (requiring appointed counsel in instances in which counsel believes there are no meritorious issues for appeal, but in which the client still wants counsel to note an appeal, to file a brief noting everything in the record which could arguably support an appeal).

9

sentencing hearing, Shifflett was consistent in his determination to plead guilty to both charges and to continue to make efforts to reduce his sentence by assisting the government.

Special Agent Moran testified that Shifflett began proffering evidence to the government before Downes became involved in the case. During the course of those encounters, Special Agent Moran advised Shifflett that if found guilty on both charges he could be sentenced to a long term of incarceration, perhaps more than thirty years, but he could limit his potential sentence by assisting the government in the prosecution of others. Thereafter, Shifflett did offer his assistance to the government and that evidence was used to convict Rickey Merica and Pedro Hernandez Portales. Additionally, he testified that after the sentence pronouncement Shifflett's family offered to continue to assist the government to help Shifflett earn a Rule 35 sentence reduction, but despite several subsequent encounters regarding the same, no family member mentioned that Shifflett wanted to appeal his conviction.

### IV.

Criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish ineffective assistance of counsel, a defendant must first show that counsel's representation fell below an objective standard of reasonableness, and second, that counsel's defective performance prejudiced defendant. Id. at 688, 694. This same test is applicable to those situations where trial counsel was allegedly ineffective by failing to file a notice of appeal. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). To establish a Sixth Amendment violation based on counsel's failure to appeal, Shifflett must prove that counsel was ineffective, and but for that ineffectiveness, an

10

appeal would have been filed. United States v. Witherspoon, 231 F.3d 923, 926 (4th Cir. 2000) (citing Flores-Ortega, 528 U.S. 470).

Where a defendant instructs his attorney to file an appeal and counsel fails to do so, counsel's representation is per se ineffective. Witherspoon, 231 F.3d at 926; accord Flores-Ortega, 528 U.S. at 477 ("We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."). However, where the defendant neither instructs his attorney to note an appeal nor explicitly states that he does not wish to appeal, counsel's deficiency in failing to appeal is determined by asking whether counsel consulted with defendant about an appeal. Flores-Ortega, 528 U.S. at 478; Witherspoon, 231 F.3d at 926. Consult means "advising the defendant about the advantages and disadvantages of taking an appeal and making a reasonable effort to discover the defendant's wishes." Flores-Ortega, 528 U.S. at 478. If counsel has consulted with defendant, the question of deficient performance is easily answered, as counsel performs in a professionally unreasonable manner only by failing to follow defendant's express instructions with respect to an appeal. Id.

Shifflett does not assert that Downes failed to consult with him regarding an appeal. Downes' undisputed testimony is that immediately after the sentencing hearing he and Shifflett discussed the ten day window for filing an appeal, the merits of filing an appeal, and the substantial benefit Shifflett had received for accepting responsibility for his crimes and in assisting the government and how those benefits as well as his opportunity to earn a Rule 35 sentence reduction may be lost if he appealed. Similarly, Shifflett conceded that immediately following sentencing he and Downes discussed filing an appeal. Accordingly, the undersigned

11

concludes there is no question that Downes consulted with Shifflett regarding an appeal. However, there is a dispute as to whether following this discussion Shifflett asked Downes to note an appeal. Shifflett testified that his intention all along had been to "fight" the gun charge, so immediately after sentencing he asked Downes to appeal his conviction on that charge. The undersigned finds this assertion not to be credible.

Shifflett offered no evidence other than his own testimony in support of his assertion that he asked Downes to file an appeal. The court finds his testimony simply unbelievable. The evidence established that Shifflett's trial strategy and post-conviction strategy was to reduce his sentence by cooperating with the government. This fact is evinced in that (1) before Downes became involved in the criminal matter, Shifflett spoke truthfully to Special Agent Moran as to his involvement in the conspiracy and his use of firearms after being advised that assisting the government may reduce his potential sentence; (2) after Downes became involved in the case, Shifflett proffered more evidence of the activities of the conspiracy and testified against a co-conspirator, with the hope of earning a § 5K1.1 motion; (3) following sentencing, Shifflett's family members contacted the government and sought to help Shifflett earn a Rule 35 sentence reduction by continuing to assist the government during his incarceration; and (4) following sentencing, Shifflett spoke to Downes several times on the telephone regarding earning a Rule 35 sentence reduction. Such a pattern of acceptance of responsibility and his continuing efforts to assist the government to reduce his sentence are at odds with Shifflett's current contention that his intent from the inception of the criminal matter was to "fight" the firearm charge and, later, to appeal his conviction on the same. Moreover, despite the lack of a written plea agreement, Shifflett received substantial benefits for pleading guilty, namely a three point offense level

12

reduction for acceptance of responsibility, PSR ¶ 37, a motion for substantial assistance which resulted in an approximate seven to ten year downward departure from the guideline range on the drug conspiracy charge, and the opportunity to earn a subsequent Rule 35 sentence reduction. The undersigned finds a defendant in Shifflett's position would not have forfeited these benefits to file a baseless appeal.[5]

Likewise, the undersigned finds the testimony offered by Shifflett's father and sister also does not support his contention that he wanted to file an appeal. Simply, the court does not credit Larry Shifflett's testimony that he asked Downes to file an appeal on his son's behalf. It is patently incredible that Larry Shifflett, after having been told to expect a sentence of seventeen to nineteen years, was so "shocked" by the far shorter sentence actually imposed that he would immediately tell his son's counsel to file an appeal. It further strains credulity to accept Shifflett's father's testimony that he called the lawyer several times about an appeal, but did not speak to his son after sentencing. Loranda Shifflett's testimony is of no moment as she stated that she never actually spoke to Downes' regarding filing an appeal nor did she leave any messages for Downes indicating Shifflett wanted Downes to note an appeal.

---

[5]The only issue Shifflett contends should have been raised on appeal is actual innocence on the gun charge. However, as found herein, Shifflett knowingly and voluntarily pled guilty to this charge and such a plea "conclusively establishes the elements of the offense and the material facts necessary to support the conviction." United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993); see also Tollett v. Henderson, 411 U.S. 258, 267(1973). Therefore, in so pleading Shifflett waived all claims of nonjurisdictional defects, including claims of actual innocence. Willis, 992 F.2d at 490. Accordingly, the undersigned finds that Shifflett had no non-frivolous grounds for appeal.

13

The evidence establishes that Shifflett was advised of his right to appeal by both the court and counsel, he consulted with counsel regarding the benefits of filing an appeal, and Shifflett expressed no desire to appeal. Therefore, the undersigned recommends that the court find that Downes was not constitutionally deficient in failing to note an appeal.

## V.

To the extent Shifflett alleges his guilty plea was not knowing and voluntary and, thus, it should be vacated, it fails. A conviction resulting from a guilty plea can only be vacated if the trial court failed to conduct a proper Rule 11 hearing and, therefore, violated the defendant's substantive rights by failing to establish that the defendant understood the nature of the charges to which the plea is offered, any mandatory minimum penalty, the maximum possible penalty, and his various rights. United States v. DeFusco, 949 F.2d 114, 117 (4th Cir. 1991); Fed. R. Crim. P. 11(c)(1). Further, as Shifflett did not move to withdraw his guilty plea, the reviewing court must give deference to the trial court, and any alleged errors should be evaluated under the plain error standard. DeFusco, 949 F.2d at 117, United States v. Martinez, 277 F.3d 517, 525 (4th Cir. 2002). In evaluating the adequacy of the Rule 11 proceedings the court must consider "whether the defendant's knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty." United States v. Goins, 51 F.3d 400, 402 (4th Cir.1995) (quoting United States v. Johnson, 1 F.3d 296, 302 (5th Cir.1993) (en banc)); United States v. Lambey, 974 F.2d 1389, 1394 (4th Cir. 1992) (stating that an appropriately conducted Rule 11 colloquy provides a strong presumption the plea is final and binding).

14

The record establishes that before entering his guilty plea Shifflett was advised as to the counts in the indictment, the nature and elements of the charges, and the minimum and maximum sentences imposed for those charges. Further, the record indicates that Shifflett avowed during the plea hearing that he had consulted with and was satisfied with counsel, he understood the rights he forfeited by virtue of his plea, and he was entering the guilty plea because he was, in fact, guilty. Guilty Plea Tr. at 16-18, 23-30, 33-36, 39; Cont. Guilty Plea Tr. 14-15. The court also ascertained that there was a factual basis for the plea, as established by Special Agent Moran's testimony. Guilty Plea Tr. at 39-43; Cont. Guilty Plea Tr. 3-8.

Shifflett argues that the plea hearing did not comport with Rule 11 because counsel did not advise the court that Shifflett refused to sign the plea agreement, Shifflett refused to admit to possessing a firearm or any drug weight, and that there was insufficient factual basis to support a conviction under 21 U.S.C. § 846 or 18 U.S.C. § 924(c). First, the court was well aware there was no written plea agreement; thus, there was no reason to advise the court that Shifflett refused to sign the plea agreement. Furthermore, Shifflett's testimony at the evidentiary hearing established that he did not sign the plea agreement because he felt it was "unjust," not because he was innocent on either count and/or because he disagreed with the drug weight. Second, the evidence adduced by Special Agent Moran clearly established that Shifflett was a major supplier and dealer of methamphetamine, the methamphetamine conspiracy distributed multiple kilograms of methamphetamine over a period of years, and on at least two occasions Shifflett had possessed, exchanged, and/or used firearms to further his methamphetamine transactions. Cont. Guilty Plea Tr. 5-8. Though given the opportunity to proclaim his innocence or contest the drug quantity, Shifflett conceded that Special Agent Moran's testimony accurately stated the extent of

15

Shifflett's illegal activities. Shifflett also stated under oath that he was pleading guilty because he was in fact guilty. Id. at 13. Thus, there would be no reason to inform the court of Shifflett's alleged qualms with accepting responsibility. Furthermore, the undersigned finds Special Agent Moran and Shifflett's testimony provided a factual basis to support Shifflett's plea of guilty.

Furthermore, Shifflett's testimony at the evidentiary hearing that he pled guilty on this charge because he was guilty and that all of the statements he made during the plea colloquy were true at the time he said them, belies his instant claim that he is innocent and only pled guilty because the prosecuting attorney and law enforcement officers threatened him with statements indicating that if he was tried and convicted he could receive thirty years in jail, law enforcement officers threatened to prosecute his family for their efforts to conceal his drug proceeds, and his attorney told him to plead guilty. As such, the undersigned finds Shifflett's subsequent challenges to his plea to be "palpably incredible and patently frivolous or false" and that his plea was knowing and voluntary and supported by a factual basis. United States v. Lemaster, 403 F.3d 216, 222-23 (4th Cir. 2005) (stating that absent extraordinary circumstances a defendant's solemn declarations made in open court during a Rule 11 plea colloquy are deemed to conclusively establish the truth of those statements).

## VI.

Shifflett's remaining claims of ineffective assistance of counsel are also without merit. As noted above, to establish ineffective assistance, Shifflett must prove that Downes' performance fell below an objective standard of reasonableness and that the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984). There is a

16

"strong presumption that counsel's performance falls within a wide range of reasonable professional assistance." Id. at 689.

In the context of a guilty plea, prejudice is established by a showing that there is a reasonable probability that, but for counsel's errors, the defendant would have pled not guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985), Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). There is no such evidence here. Instead, the record establishes that even before Downes was involved in this case Shifflett had accepted responsibility for his crimes and was making efforts to assist the government's prosecution of his co-conspirators. Likewise, after Downes became involved, Shifflett continued to assist the government in its efforts, including testifying at a co-conspirator's trial. Further, the record establishes that there was substantial evidence establishing Shifflett's guilt and, in exchange for his acceptance of responsibility and continued efforts to assist the government, he could receive a substantially reduced sentence. As such, the undersigned finds that Shifflett has not overcome the presumption that counsel rendered objectively reasonable assistance nor that but for those alleged errors he would have insisted on going to trial.

Shifflett also argues counsel was ineffective for failing to challenge the indictment for lack of factual specificity as to the firearm charge. Specifically, he claims Downes should have challenged the indictment on its face because the indictment failed to specify the type of firearm used in the drug trafficking offense. However, this argument is simply not applicable to this case. Contrary to counsel's apparent assertions, Shifflett was charged under 18 U.S.C. § 924(c), not 18 U.S.C. § 924(a)(1)(B). Furthermore, Shifflett was convicted generally under § 924(c) which does not require specificity as to firearm used, but merely states any person who uses or

17

possesses a firearm in furtherance of a drug trafficking crime shall be sentenced to a specific term of imprisonment depending on how the firearm was used. Thus, counsel's failure to raise such an argument was not prejudicial.

Likewise, Shifflett's arguments pertaining to counsel's failure to make <u>Booker</u> arguments are unavailing. In <u>Booker</u>, the Supreme Court held that the Federal Sentencing Guidelines were unconstitutional to the extent they provided for enhanced sentences based on judicial fact finding by a preponderance of the evidence and, therefore, severed two provisions of the Guidelines that made the sentencing guidelines mandatory. 543 U.S. 220, 226 (2005). In this case, the district court did not make any findings of fact as to drug weight or type of firearm to enhance Shifflett's sentence; thus, there is no plausible argument under <u>Booker</u>. Furthermore, Shifflett does not articulate what arguments counsel should have made under <u>Booker</u> at the plea and sentencing hearing which would have affected the outcome of the proceedings. He instead merely states that drug weight and type of firearm must be admitted by the defendant or determined by a jury.

Shifflett was charged in the indictment with conspiring to distribute more than 500 grams of methamphetamine and using a firearm in connection with a drug trafficking offense. The evidence adduced at the plea hearing established that Shifflett personally sold, exchanged, and/or distributed multiple pounds of methamphetamine and he possessed, used, and/or exchanged a firearm in relation to his drug distribution activities. The sentence Shifflett received was based on his admitted guilt to the charge in the indictment, and there was no enhancement based on judicial fact finding. As such, Shifflett has no plausible <u>Booker</u> argument. Accordingly, counsel could not be ineffective in failing to make an argument under <u>Booker</u>.

18

## VII.

Finally, Shifflett's argument that he was deprived due process when sentenced in accordance to the mandatory application of the Guidelines is absurd. Generally, Shifflett claims that the imposed sentence violated <u>Booker</u> because the court, and not a jury, determined the drug weight attributable to him for sentencing purposes, his constitutional right to due process was violated.

The undersigned notes that Shifflett's lengthy argument on this issue is nonsensical. First and foremost, Shifflett was sentenced <u>after</u> <u>Booker</u>; thus, there is no need for counsel to spend eight pages arguing that <u>Booker</u> should be applied retroactively to Shifflett's sentence. Second, even if Shifflett had been sentenced before <u>Booker</u> was decided, this Circuit has repeatedly held that <u>Booker</u> does not apply retroactively to cases on collateral review. <u>See</u> <u>United States v. Morris</u>, 429 F.3d 65, 69-72 (4th Cir. 2005) (holding that decision in <u>United States v. Booker</u>, 543 U.S. 220 (2005) is not retroactively applicable to cases on collateral review), <u>cert. denied</u>, 127 S.Ct. 121 (2006). Third, as noted above, the sentencing court did not engage in any judicial fact finding. Rather, Shifflett's sentence was based on his admitted guilt for conspiring to distribute a quantity of methamphetamine in excess of five hundred grams and for his use of a firearm in connection with his drug trafficking activities.

Moreover, in imposing a sentence imposed post-<u>Booker</u>, although a district court is no longer bound by the range prescribed by the Guidelines, the court must calculate the applicable Guidelines range after making the appropriate findings of fact and consider the range in conjunction with other relevant factors under the Guidelines and 18 U.S.C. § 3553(a). <u>United States v. Moreland</u>, 437 F.3d 424, 432 (4th Cir. 2006), <u>cert. denied</u>, 126 S.Ct. 2054 (2006). Such

19

sentences are valid if they are "within the statutorily prescribed range and [are] reasonable." Id. at 433 (internal quotation marks and citation omitted). The statutory term of imprisonment on the methamphetamine conspiracy charge was from ten years to life and, on the gun charge, the statute provides for a mandatory five year term of imprisonment, to run consecutive to any other term imposed. 28 U.S.C. §§ 841, 846; 18 U.S.C. § 924(c)(1)(A)(i). Shifflett's pre-sentence investigative report established that the guideline sentence range was 168 to 210 months for the conspiracy crime and noted that an additional term of sixty months for the firearm charge must be imposed and must run consecutive to the sentence imposed for the conspiracy charge. PSR ¶ 71. In accordance with the guideline range and in consideration of Shifflett's assistance to the government, the court sentenced Shifflett to a term of 80 months on the conspiracy charge and 60 months on the firearm charge, to be served consecutively. Sent. Hr. Tr. at 11.

Shifflett has not argued that the guideline range was improperly calculated, and as he was sentenced well below the statutory maximum and below even the guideline range on the conspiracy charge because of his assistance, such a sentence is presumptively reasonable. See Moreland, 437 F.3d at 432; see also United States v. Green, 436 F.3d 449, 457 (4th Cir. 2006) (stating that the reviewing court should defer to the sentencing court's judgment as to sentence when that sentence "was selected pursuant to a reasoned process in accordance with law, in which the court did not give excessive weight to any relevant factor, and which effected a fair and just result in light of the relevant facts and law."). Likewise, Shifflett's sentence on the gun charge clearly meet the statutory mandate. Shifflett has offered nothing to rebut the presumption of reasonableness and, therefore, the undersigned concludes that the sentences were reasonable and Shifflett's due process rights were not violated.

## VIII.

Based on the foregoing, the undersigned finds that Shifflett has failed to establish any credible evidence which suggests that counsel provided constitutionally deficient assistance in failing to note an appeal. Further, the undersigned finds that Shifflett's remaining claims for relief are without merit. Accordingly, the undersigned recommends that the respondent's motion to dismiss be granted and that Shifflett's motion for relief pursuant to 28 U.S.C. § 2255 be dismissed in its entirety.

The Clerk of the Court is directed immediately to transmit the record in this case to the Honorable Samuel G. Wilson, United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to filed specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court is hereby directed to send a certified copy of this Report and Recommendation to petitioner and counsel of record.

**ENTER:**     This _28_ day of August, 2007.

Michael F. Urbanski
United States Magistrate Judge

21